IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                               No. 16-20044-JTF-dkv

ROBERT BATES,

    Defendant.

_____

REPORT AND RECOMMENDATION ON DEFENDANT'S
MOTION TO SUPPRESS

_____

On March 17, 2016, the grand jury returned an indictment charging the defendant, Robert Bates ("Bates"), with eight counts of possession of a firearm as a convicted felon in violation of 18 U.S.C. § 922(g). (Indictment, ECF No. 1.) The indictment states that the offenses occurred on July 9, 2015. (*Id.*) Now before the court is Bates's April 27, 2016 motion to suppress statements made by Bates and his wife and evidence obtained by Shelby County Sheriff's Office ("SCSO") officers following the execution of a writ, pursuant to a Shelby County Circuit Court judgment, at Bates's residence, 197 Ivy Grove Rd., Collierville, Tennessee, 38017, on July 9, 2015. (ECF No. 14.) The government filed a response on May 3, 2016, (ECF No. 19), and a supplemental response on June 3, 2016, (ECF No. 22). The

motion was referred to the United States Magistrate Judge for a report and recommendation. (ECF No. 18.)

Pursuant to the reference, the court held an evidentiary hearing on June 6, 2016.[1] The government called Federal Bureau of Investigation Special Agent Kathleen Bowden ("Special Agent Bowden") as a witness and introduced into evidence: (1) a complaint and an amended complaint for breach of contract filed by the law firm Rice Admundsen & Caperton, PLLC ("Rice Admundsen") through attorney Joe Barton against Bates in the Circuit Court of Shelby County, Tennessee ("Circuit Court"); (2) the civil summons issued on November 5, 2014 and served on Bates on December 15, 2014; (3) an order issued by the Circuit Court entering default judgment against Bates on March 13, 2015; (4) an Order of Judgment against Bates entered on May 11, 2015 for a money judgment of $66,718; (5) a *Fieri Facias* filed on June 10, 2015, directing the Shelby County Sheriff to levy execution of personal property of Bates up to the judgment amount; and (6) an inventory of the property seized at Bates's residence on July 9, 2015, (collectively Ex. 2). Bates testified on his own behalf and introduced into evidence a document containing details of

---

[1]On the same date, the court held an evidentiary hearing on Bates's April 27, 2016 motion to dismiss his indictment. (ECF No. 15.) The court issued a separate report and recommendation and recommended that Bates's motion to dismiss his indictment be denied. (ECF No. 24.)

2

the investigation of Bates prepared by Inspector Susan Link ("Inspector Link"). (Ex. 1.)

After careful consideration of the statements of counsel, the testimony of the witnesses, the exhibits introduced at the hearing, and the entire record in this case, this court submits the following findings of fact and conclusions of law and recommends that Bates's motion to suppress be denied.

## I. PROPOSED FINDINGS OF FACT

The exhibits introduced at the hearing indicate that on November 5, 2014, Rice Admundsen filed a complaint for breach of contract in Circuit Court alleging that Bates failed to pay $47,219.99 in legal fees. (Gov't's Ex. at PageID 60-68, Ex. 2.) Bates was served with a civil summons on December 15, 2014. (*Id.* at 68-69.) An Order of Default Judgment was entered on March 13, 2015, (*Id.* at 70), and, on May 11, 2015, the Circuit Court entered an Order of Judgment for a money judgment of $66,718, (*Id.* at 71-72). On June 10, 2015, a *Fieri Facias* was filed directing the Shelby County Sheriff to levy execution of personal property of Bates to satisfy the judgment amount. (*Id.* at 73-75.) The levy was executed on July 9, 2015 at Bates's residence where several items were seized including eight firearms. (*Id.* at 76.)

The government's first witness, Special Agent Bowden, has been an FBI agent since 1995 and is in charge of investigating

white collar crimes. She testified that she is involved in a separate fraud investigation of Bates. Special Agent Bowden testified that she became involved in the instant case in mid-August 2015 after she was contacted by Inspector Link. Special Agent Bowden stated that she is not aware who contacted Inspector Link regarding this case but that she believed it was someone from the "civil side." Special Agent Bowden and Inspector Link were informed that a number of firearms were retrieved from Bates's residence. When they attempted to retrieve the firearms, Special Agent Bowden and Inspector Link learned that the firearms had been auctioned at a public sale on August 6, 2015. Special Agent Bowden testified that they were able to recover one firearm from Larry Rice, four firearms from Joe Barton, and three firearms from Top Brass, a gun store in Millington, Tennessee. Special Agent Bowden further stated that she was not aware and was not involved in Bates's civil proceedings.

Bates testified as a witness on his behalf. Bates testified that in the early morning of July 9, 2015, someone jumped the fence behind his residence. When Bates went outside to the backyard, a guy yelled, cursed, and told him to go to his front door. At the front door, Bates was met by a SCSO officer who told him he was going in and walked into Bates's residence. On cross-examination, Bates stated that the SCSO officer did not

4

kick the door but opened it and walked in without Bates's consent stating that they would talk inside the house. The SCSO officer told Bates that he was there to serve a judgment on a lawsuit. Bates testified that he did not see a warrant. At some point, more deputies arrived and after searching everything in the house, seized a few items such as firearms, computer, tools, and his pick-up truck. On cross-examination, Bates testified that he did not remember receiving a summons regarding the civil lawsuit. He further stated that he has not contested the civil seizure in state court.

II. PROPOSED CONCLUSIONS OF LAW

In the instant motion to suppress, Bates argues that the seizure of the firearms pursuant to the writ of execution violates Bates's rights under the Fourth Amendment to the U.S. Constitution because the Shelby County Sheriff's Office officers were not lawfully in Bates's residence. (ECF No. 15.) Based on this argument, Bates seeks to suppress the firearms seized during the civil seizure as well as statements made by him and his wife during the civil seizure as fruit of the poisonous tree. In response, the government submits that the seizure of the firearms from Bates's residence is constitutional because the officers acted pursuant to a court order and followed proper procedures in executing the writ. (ECF No. 19.) In its supplemental brief, the government further argues that the

5

exclusionary rule should not apply in this case because the federal firearms charges were not within the SCSO officers' "zone of primary interest." (ECF No. 22.)

A. Whether the Seizure of the Firearms Pursuant to the Writ of Execution Was Unconstitutional

The Fourth Amendment of the United States Constitution protects a citizen from unreasonable searches and seizures. U.S. Const. amend. IV. "[R]easonableness is still the ultimate standard under the Fourth Amendment," and, when the officers act "pursuant to a court order . . . a showing of unreasonableness . . . would be a laborious task indeed." *Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 71 (1992)(citations and internal quotation marks omitted). Here, the SCSO officers entered Bates's residence pursuant to a *Fieri Facias* order issued by the Circuit Court of Shelby County, Tennessee, ordering the Shelby County Sheriff to levy execution on the personal property of Bates and seize all items of value from Bates's residence up to the judgment amount. (Gov't's Exs. at PageID 73, Ex. 2.)

Under Tennessee law, a money judgment can be enforced through a writ of execution. Tenn. Code Ann. § 26-1-103. The writ of execution is derived from the common law writ of *fieri facias* which means literally "cause (it) to be done." *In re Skinner*, 213 B.R. 335, 338 (Bankr. W.D. Tenn. 1997)(citations omitted). The writ "commands the sheriff to levy and make the

6

amount of the judgment from the goods and chattels of the judgment debtor." *Id.* (citing *Keep Fresh Filters, Inc. v. Reguli,* 888 S.W.2d 437, 443 (Tenn. Ct. App. 1994). The sheriff has thirty days to perform the levy and return the writ. Tenn. Code Ann. § 26-1-401. A levy is accomplished "by the officer's asserting dominion over the property by actually taking possession of it or doing something that amounts to the same thing." *Keep Fresh Filters*, 888 S.W.2d at 444; *see also* Tenn. R. Civ. P. 69.06 ("A levy is effective when the sheriff with a writ of execution exercises control over the judgment debtor's personalty."); *Revis v. Meldrum*, 489 F.3d 273, 283 (6th Cir. 2007)(stating that a writ of execution for personal property may be levied upon through seizure of the property).

Here, summons was served on Bates at his residence on December 15, 2014 notifying him of a civil action filed against him in Circuit Court. (Gov't's Exs. at PageID 68-69, Ex. 2.) After judgment was entered, Joe Barton, counsel for the judgment creditor, sought and was granted a writ of execution from Shelby County Circuit Court. (*Id.* at PageID 73-75.) The clerk duly issued the writ which was delivered to the Sheriff of Shelby County, Tennessee for execution. Bates does not argue that these procedures violated his constitutional rights. Rather, he argues that the SCSO officers who executed the writ did not follow proper procedure by entering Bates's residence, but he

7

does not otherwise specify what specific statute the SCSO officers violated. The facts presented to the court demonstrate that the *Fieri Facias* authorized seizure of "all gold, silver, safes, cars, cash, and any item of value up to the judgment amount" from Bates's residence. (*Id.* at PageID 73.) Bates did not argue or put forth evidence that force was used by the SCSO officers to enter Bates's residence or that the SCSO officers violated the terms of the *Fieri Facias* order. As discussed above, personal property may be levied upon through seizure which is precisely what happened in this case. *See also Revis v. Meldrum*, No. 3:04-CV-532, 2005 WL 1489126, at *3-5 (E.D. Tenn. June 16, 2005), *aff'd in part, vacated in part, remanded*, 489 F.3d 273 (6th Cir. 2007)(holding that the deputy's action of removing the plaintiff's property from his house to a locked storage facility pursuant to a writ of execution was a reasonable seizure that did not violate plaintiff's Fourth Amendment rights).[2]

---

[2]*Revis v. Meldrum*, No. 3:04-CV-532, 2005 WL 1489126 (E.D. Tenn. June 16, 2005) was vacated in part by the Sixth Circuit. In *Revis*, the Circuit Court of Anderson County, Tennessee issued two writs of execution: the first writ listed the plaintiff's residence itself and the second writ listed all personal property located at the plaintiff's residence. *See Revis v. Meldrum*, 489 F.3d 273, 277 (6th Cir. 2007). Pursuant to these writs, the deputy removed the plaintiff's personal property from the plaintiff's residence into a storage facility, changed the locks to the plaintiff's residence, and escorted the plaintiff out of his residence. *Id.* at 278. The Sixth Circuit acknowledged that the plaintiff's "personal property was

8

Bates is correct that "[t]he service of civil process does not authorize a warrantless search of private property," *State v. Harris*, 919 S.W.2d 619, 625 (Tenn. 1995). However, for the reasons discussed herein, a writ of execution authorizes the SCSO officers to enter Bates's residence and seize the property described in the writ. Therefore, Bates has failed to show that the Tennessee statutes and rules related to execution were not followed by the SCSO officers or that the seizure of the firearms was otherwise unreasonable under the Fourth Amendment.

B. <u>Application of the Exclusionary Rule</u>

Even if the court were to conclude that the SCSO officers' actions violated the Fourth Amendment, which they do not, Bates has not shown that the exclusionary rule should apply in this case to exclude the firearms obtained by the SCSO officers from the execution of the writ. The exclusionary rule "'is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.'" *United*

---

constitutionally seized in executing the writs." *Id.* at 280. As to the seizure of the plaintiff's residence, the Sixth Circuit stated that "a writ of execution for real property is generally levied by formally noting on the writ a legal description of the property and giving notice to the owner and the public that the property is subject to sale." *Id.* at 283. Because the deputy did not give notice to the plaintiff that the property was subject to sale but instead changed the locks and evicted him, the physical seizure of the residence was in violation of the Fourth Amendment and the Sixth Circuit reversed on this ground. *Id.* at 287.

9

States v. Janis, 428 U.S. 433, 446 (1976)(quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)). The Supreme Court has stated that the exclusionary rule does not apply to every violation of the Fourth Amendment but that it is "appropriate only if the remedial objectives of the [exclusionary] rule are thought most efficaciously served." *Arizona v. Evans*, 514 U.S. 1, 12-14 (1995). The primary objective of the exclusionary rule is to deter misconduct by law enforcement and should not be applied where it would "deter objectively reasonable law enforcement activity." *United States v. Leon*, 468 U.S. 897, 916, 919 (1984); *Janis*, 428 U.S. at 446 ("[T]he prime purpose of the rule, if not the sole one, is to deter future unlawful police conduct." (quotation and internal quotation marks omitted)). "To determine whether application of the rule is substantially likely to deter future violations, a court will examine the 'zone of primary interest' of the officers who conducted the search." *Wolf v. Commissioner of Internal Revenue*, 13 F.3d 189, 193 (6th Cir. 1993)(citing *Janis*, 428 U.S. at 458).

In *Janis*, state officers obtained a warrant directing a search for bookmaking paraphernalia at specific apartment locations and on the person of defendant Janis and another individual. *Janis*, 428 U.S. at 434. After the search, Janis was arrested and the police seized from Janis property

10

consisting of $4,940 in cash. *Id.* at 436. Soon thereafter, a state officer telephoned an agent of the United States Internal Revenue Service ("IRS") and informed the agent that Janis had been arrested for bookmaking activity. *Id.* Based on evidence obtained by the state police, the IRS made an assessment against Janis and exercised its statutory authority to levy upon the $4,940 in cash in partial satisfaction of the assessment against Janis. *Id.* at 437. Janis moved to suppress the evidence seized and the district court granted Janis's motion holding that Janis was entitled to a refund of the $4,940 because the "evidence upon which the [IRS] assessment was based was the result of illegally obtained evidence." *Id.* at 439. The U.S. Court of Appeals for the Ninth Circuit affirmed. *Id.*

The Supreme Court reversed. The Court refused to extend the exclusionary rule to exclude from federal civil proceedings, i.e. the civil tax assessment made by the IRS, evidence seized by a state criminal enforcement officer. *Id.* at 447-60. The Court emphasized that, in that case, the state officer committing the unconstitutional search or seizure was not an agent of the sovereign that sought to use the evidence, i.e. the federal government, and "ha[d] no responsibility or duty to, or agreement with, the sovereign seeking to use the evidence." *Id.* at 455 & 455 n.31. The Court further stated:

> [C]ommon sense dictates that the deterrent effect of the exclusion of relevant evidence is highly attenuated when the "punishment" imposed upon the offending criminal enforcement officer is the removal of that evidence from a civil suit by or against a different sovereign. In [*Elkins v. United States*, 364 U.S. 206 (1960)] the Court indicated that the assumed interest of criminal law enforcement officers in the criminal proceedings of another sovereign counterbalanced this attenuation sufficiently to justify an exclusionary rule. Here, however, the attenuation is further augmented by the fact that the proceeding is one to enforce only the civil law of the other sovereign.
>
> This attenuation, coupled with the existing deterrence effected by the denial of use of the evidence by either sovereign in the criminal trials with which the searching officer is concerned, creates a situation in which the imposition of the exclusionary rule sought in this case is unlikely to provide significant, much less substantial, additional deterrence. It falls outside the offending officer's zone of primary interest. The extension of the exclusionary rule, in our view, would be an unjustifiably drastic action by the courts in pursuit of what is an undesired and undesirable supervisory role over police officers.

*Id.* at 457-58 (citation omitted); *see also Wolf*, 13 F.3d at 195 (holding that the deterrence effect was too attenuated to justify applying the exclusionary rule in a civil tax proceeding, when the evidence in question was obtained through a criminal investigation of drug activity).

In *United States v. Medina*, 181 F.3d 1078 (9th Cir. 1999), the defendant Medina sought to suppress one gun which was seized after his luggage was x-rayed at an airport and another gun seized from his vehicle during a traffic stop. *Id.* Months

after these guns were seized, Medina was arrested by federal agents on armed bank robbery charges. *Id.* Federal investigators discovered that Medina had used the two guns previously seized by the police in the bank robberies. *Id.* Medina sought to suppress the guns arguing that the two searches were warrantless and without probable cause. *Id.* The district court denied the motion to suppress without a hearing reasoning that "even if the guns had been unlawfully seized, they were not subject to suppression because at the time of the searches, the local law enforcement authorities did not have the federal investigation within their 'zone of primary interest.'" *Id.* at 1080-81. The Ninth Circuit affirmed stating that:

> The officers who performed the airport search and the vehicle search in the instant case had no knowledge or anticipation of Medina's subsequent prosecution for armed bank robbery. In other words, they did not have the bank robbery charges within their zone of primary interest. There is no suggestion of collusion between the officers who conducted the searches and the investigators who subsequently located the unclaimed guns. . . . In this case, the record indicates that it was the thorough investigative work by the investigators (rather than collusion with the officers who conducted the searches) which led them to the discovery of the guns which were still in the custody of the Los Angeles police.
>
> Absent any threshold of a connection or "nexus" in time, place, or purpose between the searches and the subsequent prosecution, there is no appreciable deterrent purpose in suppressing the evidence.

*Id.* at 1082.

In *Unites States v. Payne*, 181 F.3d 781 (6th Cir. 1999), the Sixth Circuit recognized the "zone of primary interest" doctrine as applicable in this circuit, but refused to apply it in *Payne*. *Id.* at 788. In *Payne*, the defendant Payne sought to suppress evidence obtained by a parole officer following communication between the parole officer and the state police. *Id.* at 783-85. The Sixth Circuit stated:

> In this case, the search was conducted primarily by parole officers, whose zone of interest is distinct from, but overlaps with, an interest in enforcing the drug laws. Although the parole officer is interested in the parolee's rehabilitation, the officer is also charged with monitoring compliance with various restrictions, including restrictions on the use of drugs. As in this case, parole officers often work closely with the police. Exempting evidence illegally obtained by a parole officer from the exclusionary rule would greatly increase the temptation to use the parole officer's broad authority to circumvent the Fourth Amendment.

*Id.* at 788.

In the present case, the court is asked to create judicially a deterrent sanction by holding that property obtained by SCSO officers pursuant to a writ of execution be inadmissible in a subsequent federal criminal proceeding. Such an extension of the exclusionary rule is not justified. As in *Medina*, the officers who performed the civil seizure had no knowledge or anticipation that they would discover evidence that would subsequently be used in a federal criminal prosecution. The SCSO officers who executed the writ did not have any

14

subsequent federal charges within their zone of primary interest. There was no collusion between the SCSO officers who executed the writ and the federal investigators who subsequently located the firearms. Unlike the parole officers in *Payne*, the SCSO officers here did not collaborate with federal investigators for the purpose of investigating any federal crimes. It was the investigative work by the federal investigators which led them to the discovery of the firearms and not "an explicit and demonstrable understanding between the two law enforcement bodies." *Wolf*, 13 F.3d at 195.

Further, as in *Medina*, there is no connection in time, place, or purpose between the civil seizure and the subsequent federal prosecution. As Special Agent Bowden testified, the federal investigation of Bates began in mid-August 2015, more than a month after the July 9, 2015 civil seizure. Bates was indicted on federal charges on March 17, 2016, (ECF No. 1), more than eight months after the civil seizure occurred. The SCSO officers' purpose and objective was to follow an order issued by the Circuit Court to execute a civil seizure of Bates's property; it was not to investigate and search for evidence of federal crimes. The SCSO officers did not have "the use of the evidence in the subsequent proceeding in mind when they made the seizure." *See Wolf*, 13 F.3d at 195. The writ was executed pursuant to Tennessee statutory authority to which all Tennessee

citizens are subject and it was not intended to punish Bates for his firearms violations. *See id.* As in *Janis*, the attenuation is further augmented by the fact that the prior proceeding was to enforce the civil law of the state of Tennessee while the instant proceeding is one to enforce the criminal law of the federal government. *Janis*, 428 U.S. at 458; *Wolf*, 13 F.3d at 194 (holding that the "question whether or not application of the exclusionary rule will deter future violations will depend primarily on the nature of the proceeding").

Bates argued at the hearing that it does not matter who conducts the search, whether federal or state government, and therefore, the court cannot ignore the methods by which the search and seizure was conducted. The court agrees. In *Mapp v. Ohio*, 367 U.S. 643 (1961), the Supreme Court held that the identity of the sovereign (state or federal) conducting the search is irrelevant to the application of the exclusionary rule. The proper inquiry, however, is "whether the connection between the searches and the instant proceeding is such that suppression of the evidence would result in appreciable deterrence." *Medina*, 181 F.3d at 1982 (citations omitted). For the reasons stated above, the connection between the civil seizure and the instant proceeding is too attenuated. Given these facts, there is no deterrent purpose in suppressing the evidence in this case.

## III. RECOMMENDATION

For the reasons expressed above, it is recommended that Bates's motion to suppress the firearms seized during the civil seizure and statements made by himself or his wife during the civil seizure be denied.

Respectfully submitted this 28th day of June, 2016.

s/Diane K. Vescovo
DIANE K. VESCOVO
UNITED STATES MAGISTRATE JUDGE

NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.